IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Warees Muzakkir,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et. al.,<br><br>    Respondents. | No. CV 10-633-TUC-FRZ (HCE)<br><br>**REPORT & RECOMMENDATION** |

On October 11, 2010, Petitioner, who is confined at the Arizona State Prison, filed a *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). On February 28, 2011 Respondents filed an Answer (Doc. 21). On March 9, 2011, Petitioner filed his Reply (Doc. 23). Thereafter, the Court directed Respondents to file supplemental information (Doc. 36) and on August 26, 2011, Respondents filed their Supplemental Exhibits in compliance with the Court's Order (Doc. 41) (hereinafter "Respondent's Supp. Exhs."). Also pending before the Court is Petitioner's Request for Transmission of Record (Doc. 43).

Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge. (Doc. 5). For the following reasons, the Magistrate Judge recommends that the District Court dismiss Petitioner's Petition for Writ of Habeas Corpus and deny Petitioner's Request for Transmission of Record.

**I.     FACTUAL & PROCEDURAL BACKGROUND**

    A.     State Proceedings

          1.     Conviction

On October 29, 1991, in Pima County Superior Court case number CR-35933, a grand

jury indicted Petitioner for one count of Attempted Fraudulent Scheme and Artifice (Count 1) and one count of Forgery (Count 2). (Answer, p. 2 & Exh. A).[1] On August 20, 1992, a jury found Petitioner guilty as charged on both counts. (Answer, p. 2 & Exh. C). At Petitioner's sentencing on October 16, 1992, the trial court imposed concurrent aggravated terms of 15 years of imprisonment on Count 1 and 12 years of imprisonment on Count 2, both sentences to run consecutive to Petitioner's sentences in CR-29681 and CR-29722. (Answer, p. 2 & Exh. D).

### 2. Direct Appeal

On or about February 2, 1993, Petitioner filed a direct appeal challenging the denial of his motion for a mistrial. (Answer, p. 2 & Exhs. E, F). On June 3, 1993, the appellate court affirmed Petitioner's convictions and sentences. (Answer, Exh. F). Petitioner filed a motion for reconsideration which was denied. (Answer, Exhs. E, G). Petitioner next filed a petition for review by the Arizona Supreme Court which was denied on November 19, 1993. (*Id.*). The mandate issued on December 2, 1993. (*Id.*).

### 3. Petitions for Post-Conviction Relief Proceedings

Petitioner filed a *pro se* Petition for Post-Conviction Relief (hereinafter "PCR Petition"), which the trial court dismissed on October 6, 1995.[2] (Answer, Exh. H). The trial court also denied Petitioner's motion for reconsideration (Answer, Exh. I). Petitioner next filed a petition for review by the Arizona Court of Appeals. (Answer, p.3 & Exhs. J, K). On June 4, 1996, the appellate court granted review but denied relief. (Answer, Exh. K). Petitioner sought review by the Arizona Supreme Court which was denied on October 25, 1996. (Answer, Exh. J).

---

[1]Petitioner previously had been convicted in CR-29681 of conspiracy to commit arson of an occupied structure, arson of an occupied structure, and criminal damage, and in CR-29722 of, among other things, theft by extortion and conspiracy to commit a fraudulent scheme. (*See* Answer, Exh. P, p.2; Answer, Exh. Q (Internal Exh. A, Att. 10)).

[2]The PCR Petition is not part of the instant record. Petitioner indicates that he filed the PCR Petition sometime in 1995. (Petition, p.3). The record reflects that Petitioner raised ineffective assistance of counsel claims in his PCR Petition. (Answer, Exh. K).

On August 7, 2006, Petitioner filed a *pro se* Notice of Post-Conviction Relief, a Request for Preparation of Post-Conviction Relief Record, and a Petition for Post-Conviction Relief (hereinafter "Second PCR Petition"). (Anser, Exh. L). Petitioner asserted that he had been resentenced in 1997 and he referred to a 1997 resentencing hearing before the Honorable Bernardo P. Velasco. (*Id.* (Notice of Post-Conviction Relief; Request for Preparation of Post-Conviction Record)). He also asserted that he had been granted clemency in April 2002 in CR-29681, CR-29722 and CR-35933. (*Id.* (Notice of Post-Conviction Relief)). Petitioner further asserted that he "realizes that is [sic] time is completly [sic] up and must [sic] be released." (*Id.*).

On August 25, 2006, the trial court appointed counsel to represent Petitioner during the Second PCR Proceeding. (Answer, Exh. M). In a March 15, 2007 order, the trial court, *inter alia,* stated:

> The Defendant's pro per petition made reference to a resentencing by Judge Velasco. The court file indicates that Judge Gin was the sentencing judge and no resentencing ever occurred. Judge Velasco apparently sentenced the Defendant in another unrelated case. Absent additional information from defense counsel on this issue, the State need not address this resentencing claim.

(Answer, Exh. O).

On July 27, 2007, Petitioner's appointed counsel submitted Petitioner's Second PCR Petition which solely addressed the issue of clemency. (Answer, Exh. P). On October 9, 2007 the State filed its response. (Answer, Exh. Q). In its response, the State included a sworn affidavit of Susan Kaye, a Time Computation Program Specialist for Central Office, Offender Services/Time Computation Unit for the Arizona Department of Corrections. (Answer, Exh. Q (Internal Exh. A)). In her affidavit, Ms. Kaye discussed Petitioner's convictions and sentences in CR-29681, CR-29722, and CR-35933, and the Arizona Board of Executive Clemency's recommendation of commutation in CR-29722 from 15.75 years to 9 years. (*Id.*) Ms. Kaye further explained that the sentences in CR-29722 were completed on January 14, 1999, but that the "remaining sentences in CR[-]29681 and CR[-]35933 were not affected by the recalculation of CR[-]29722." (Id. at ¶8) Ms. Kaye further stated:

> [I]nmate Muzakkir has submitted several documents that he claimed to be authentic that have proved to be forged, including a September 1, 1995 and April 22, 2002 letter from the Arizona Board of Executive Clemency that purported to have granted him commutation on CR[-]35933. The Board clarified that it had only recommended CR[-]29722 for disproportionality and commutation.

(Id. at ¶9) The State also attached documentation including an "ORDER FOR RESENTENCING AND RELEASE" from Pima County Superior Court, purportedly issued by the Honorable Bernardo P. Velasco on January 12, 1998 directing that Petitioner be released from custody. (Exhibit Q, (Internal Exh. A, Att. 10))(capitalization in original). The State also submitted an April 8, 2003 memorandum directed to Charles L. Ryan, (then) Acting Director for the Arizona Department of Correction from Donna H. Clement, Administrator for the Arizona Department of Corrections, stating:

> The order dated January 12, 1998 from Pima County was received by the Department of Corrections in October 2001 and determined to be forged after contacting Pima County Superior Court. The Department also received the letter from the Board of Executive Clemency dated September 1, 1995 and found that it was also forged. Inmate Muzakkir has also sent forged documents to the U.S. Supreme Court and requested enforcement of a forged grant of habeas corpus. Inmate Muzakkir has received several discipline violations and has release credits forfeited due to his forgery of documents in an attempt to gain illegal release from prison. Inmate Muzakkir is considered an escape risk. He has an extensive history dating back over 15 years of deceitful, violent, and threatening behavior.

(*Id.*).

The trial court set the matter for an evidentiary hearing and indicated that Petitioner "bears the burden of proving that he receive [sic] a commutation of sentence in [CR-35933]." (Answer, Exh. R.) On November 20, 2007, Petitioner filed a *pro se* Reply and, in February 2008, he filed a *pro se* supplemental reply and supplemental exhibits. (Answer, Exhs. S, U, V).

On March 31, 2008, the trial court held an evidentiary hearing. (Answer, Exh. W). Defendant testified and the State presented testimony as well. (*Id.*). Several exhibits were admitted and the court took the matter under advisement. (*Id.*). On April 7, 2008, the trial court issued its order finding Petitioner's claim was fraudulent and denying post-conviction relief. (Answer, Exh. X). Specifically, the court made the following findings:

> 1. At the evidentiary hearing, the Defendant testified that former Governor Symington investigated his convictions in CR-35933, determined that the Defendant was falsely charged, and ordered the dismissal of the charges. The testimony is not credible. While the Governor may grant pardons or commute sentences, the State's chief executive officer has no authority to dismiss a criminal conviction or the resulting sentence.
>
> 2. To support his testimony, the Defendant offered Exhibit A at the evidentiary hearing. The exhibits [sic] purports to be a copy of a proclamation issued by the Board of Executive Clemency. The essential content of this proclamation can be summarized as follows: 1) the Board recommended dismissal of the charges in CR[-]35933, 2) the Governor denied the recommendation, and 3) the recommendation nonetheless became effective by default because the Governor failed to personally sign the denial letter. On its face, Exhibit A contradicts the defendant's testimony that the Governor had granted him relief.
> More importantly, insofar as it pretends to apply to the Sentences in CR[-]35933, Exhibit A is a forgery. In all likelihood, the exhibit is a fraudulently-altered version of a legitimate proclamation by the Board in another of the Defendant's cases, CR-29722. As to that cause number, and that cause number only, the Defendant's sentences were commuted by default after the Board recommended commutation and the Governor's notice of denial lacked his signature.

(*Id.*).

On April 29, 2008, the trial court denied Petitioner's request for a transcript of "the January 12, 1998 'resentencing hearing'..." because "[n]o such hearing took place. The defendant's claim to the contrary, like many of his claims, appears to be fraudulent." (Answer, Exh. Y). In that same order, the court granted Petitioner's request for a transcript of the May 31, 2008 evidentiary hearing. (*Id.*).

On May 1, 2008, the trial court, *inter alia,* granted Petitioner an extension until July 1, 2008 to file a petition for review, denied Petitioner's "motion to 'reactivate' a prison transfer order....Inmate housing is solely within the discretion of the Department of Corrections", and denied Petitioner's "request for the record of a 'resentencing' hearing dated January 12, 1998....No such hearing took place." (Answer, Exh. Z).

The instant record reflects that Petitioner did not file a petition for appellate court review of the trial court's April 7, 2008 denial of Petitioner's Second PCR Petition. (*See* Answer, p. 8 & Exhs. E, J; Respondents' Supp. Exhs., pp. 1-2 & Exhs. BB-EE).

B. Petitioner's Federal Petition

On October 11, 2010, Petitioner presented his federal habeas petition to prison

officials for mailing (Petition, p. 11) and the Petition is deemed filed as of that date. *See Houston v. Lack,* 487 U.S. 266, 270-271 (1988) (under the prison "mailbox rule", a petition is deemed filed when handed by the inmate to a prison official for mailing); *Miles v. Prunty*, 187 F.3d 1104, 1106 n. 2 (9th Cir.1999) (extending the "mailbox rule" to habeas petitions filed under the Antiterrorism and Effective Death Penalty Act of 1996). Petitioner raises one ground for relief in his Petition: that his rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution have been violated because "the Hon. Bernardo P. Velasco ordered the Petitioner ordered [sic] released from custody [sic] resentencing hearing Jan. 12, 1998 Pima County Superior Ct. (Tucson)." (Petition, p.6). Petitioner also maintains that the resentencing court further ordered that he be "held in [sic] federal detention facility pending release..." and that the court directed the return of his property "including $350,000... in cash, coin collection, religious tapes, and clothing." (*Id.*).

Respondents contend that Petitioner's Petition is untimely filed. (Answer, pp. 9-10). Alternatively, Respondents assert that Petitioner's claim is not exhausted and is not a cognizable ground for federal habeas relief. (*Id.* at pp. 10-15).

Petitioner asserts in his Reply that Respondents are mistaken.

## II. DISCUSSION

### A. Review of Petitioner's Federal Habeas Petition

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA") applies to federal habeas petitions, like Petitioner's, that are filed after April 24, 1996. *See Lindh v. Murphy,* 521 U.S. 320, 327 (1997). The AEDPA "imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court." *Patterson, v. Stewart,* 251 F.3d 1243, 1245 (9th Cir. 2001) (*citing* 28 U.S.C. § 2244(d)(1)). Pursuant to section 2244, the limitations period:

> shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented

> from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Moreover, the AEDPA limitations period may also be subject to statutory or equitable tolling. 28 U.S.C. §2244(d)(2); *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009).

Because Petitioner did not petition for a writ of *certiorari* from the United States Supreme Court during his direct appeal, Petitioner's conviction became final 90 days after the Arizona Supreme Court's November 19, 1993 denial of review of Petitioner's direct appeal. *See Bowen v. Roe,* 188 F.3d 1157, 1159 (9th Cir. 1999) ("the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of *certiorari* from the United States Supreme Court, whether or not the petitioner actually files such a petition."). Thus, Petitioner's conviction became final on February 19, 1994.

The AEDPA was enacted in April 1996, a few years after Petitioner's conviction became final. It is well-settled that "[s]tate prisoners, like...[Petitioner herein], whose convictions became final prior to AEDPA's enactment, had a one-year grace period [–until April 24, 1997–] in which to file their petitions." *Patterson,* 251 F.3d at 1245-46 (citations omitted).

However, the AEDPA statute of limitations is tolled during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. §2244(d)(2). Petitioner indicates that he filed his PCR Petition sometime in 1995 (Petition, p. 3) and Respondents have not disputed this. Therefore, the AEDPA statute of limitations was tolled until October 25, 1996, when the Arizona Supreme Court denied Petitioner's petition for review in that matter. Thus,

the AEDPA limitations period began to run October 26, 1996 and expired on October 25, 1997. *See Patterson,* 251 F.3d at 1247.

Because Petitioner initiated this action in October 2010, some thirteen years after the AEDPA limitations period expired, his Petition is untimely filed unless 28 U.S.C. § 2244(d)(1)(B),(C), or (D) operate to delay commencement of the statute of limitations or tolling applies.

Petitioner claims that he was resentenced in January 1998, and that he is being held in state custody in violation of the court's order resulting from that re-sentencing. (Petition, p. 6). According to Petitioner, on January 12, 1998, Judge Velasco ordered his release "from custody with absolute discharge" and that Petitioner be transferred to federal custody pending his release. (*Id.*). According to Petitioner, the January 12, 1998 order also directed the return of Petitioner's personal property including "$350,000 (three hundred and fifty thousand dollars) in cash, coin collection, religious tapes, and clothing." (*Id.*).

During Petitioner's Second PCR proceeding, the State filed a copy of a January 12, 1998 order which ADOC staff determined was fraudulent. (Answer, Exh. Q (Internal Exh. A, Att. 10)). The order pertained to CR-29681, CR-29722 and CR-35933, was purportedly signed by Judge Velasco, and stated:

> It appearing from the Clemency Petition and Recommendation on file herein, and the court finding sufficient reason, therefore, you are hereby;[sic]
> DIRECTED TO ISSUE, in the name of the state of Arizona, a new time computation reflecting that counts A01, A02, and A17 be commuted from 15.75 years to 9 years. All case numbers are concurrent, therefore making the defendants [sic] time fully completed and is hereby ORDERED that the defendant be released from the custody of the Department of Corrections. It is further ORDERED, that the defendant's property which was confiscated by the Tucson Police Department be returned to him.[sic]
> (1)   $250,000 cash (two-hundred fifty thousand dollars)[3]
> (2)   Coin collection
> (3)   Religious tapes and pictures.

---

[3]In the instant Petition, Petitioner claims the order specified that $350,000 was to be returned to him. (Petition, p.6).

- 8 -

(Answer, Exh. Q (Internal Exh. A, Att. 10)).[4]

The record is clear that Petitioner maintains that, by virtue of the January 12, 1998 order, he was to be released immediately from state custody. (Petition, p.6). Moreover, the record suggests that Petitioner became aware of the factual predicate of this claim when the order issued on January 12, 1998 and thus, under section 2241(d)(1)(D), the AEDPA statute of limitations began to run on January 13, 1998 and expired on January 12, 1999. *See Patterson,* 251 F.3d at 1247 (applying anniversary method to determine AEDPA statute of limitations period); *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (under the anniversary method, the first day of the one-year limitations period is the day after the triggering event, thus giving petitioners "until the close of business on the anniversary date of..." the triggering event to file a federal habeas petition). In such a case, the August 7, 2006 filing of Petitioner's Second Notice of Post-Conviction Relief would have no effect on the AEDPA limitations period given that a state post-conviction relief proceeding filed *after* expiration of the AEDPA statute of limitations period has no effect whatsoever on the statute of limitations calculation because such state proceeding can neither revive the limitations period nor toll the already-expired period. *See Ferguson v. Palmateer,* 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *Jiminez v. Rice,* 276 F.3d 478, 482 (9th Cir. 2001) (where petitioner filed his state post-conviction relief proceeding "after the AEDPA statute of limitations ended...[t]hat delay resulted in an absolute time bar..."); *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.").

However, the instant record is not conclusive as to when Petitioner alleges he became

---

[4]It also appears that in 2001, a minute entry regarding the alleged January 12, 1998 resentencing was submitted to the Arizona Department of Corrections Time Computation Unit by "fax from New York Legal Defense..." and that Arizona Department of Corrections staff later determined that the minute entry was "not a valid document and was not issued by the Pima County Superior Court." (Answer, Exh. Q (Internal Exh. A, Att. 7)).

aware of the alleged 1998 resentencing order. Moreover, Respondents take the position that the AEDPA statute of limitations was tolled until resolution of Petitioner's Second PCR proceeding. (*See* Answer, pp. 9-10). The Court will grant Petitioner the same benefit of the doubt as Respondents have and assume the AEDPA statute of limitations was tolled through Petitioner's Second PCR proceeding.

The trial court denied Petitioner's Second PCR Petition on April 7, 2008 and thereafter granted Petitioner an extension until July 1, 2008 to file a petition for appellate review. (Answer, Exhs. X, Z). However, Petitioner did not file a petition for review within that deadline, or at all.[5] With regard to statutory tolling under section 2244(d)(2), only an appeal that is timely will toll the statute of limitations for the time period between the lower court's adverse decision and the filing of a notice of appeal in the higher court. *See Evans v. Chavis*, 546 U.S. 189, 191, 126 (2006). Because Petitioner failed to seek review by the Arizona Court of Appeals regarding the trial court's denial of his Second PCR Petition, the statute of limitations herein was tolled pursuant to section 2244(d)(2) until April 7, 2008-the date the trial court denied Petitioner's Second PCR Petition. *See Id*. Thus, the AEDPA statute of limitations commenced to run the following day, April 9, 2008 and expired on April 8, 2009. *See Patterson*, 251 F.3d at 1245. Petitioner waited until October 11, 2010, over two years after the expiration of the AEDPA statute of limitations, to seek federal habeas relief. Consequently, the instant Petition is untimely filed unless equitably tolling applies.

---

[5]In his Petition, Petitioner maintains that he has exhausted his claim but that he is unable to provide pertinent dates because the Arizona Department of Corrections has "confiscated" his files. (Petition, "Special Note To The Court"). Petitioner further states that his records will be returned to him on December 9, presumably of 2010 as the Petition was filed in October 2010, and that he will then be able to "supply the court with current dates and official resentencing transcripts of Jan[.] 12, 1998 as exhibits of proof." (*Id.*). In his Reply, Petitioner asserts that he filed a petition for review with the Arizona Court of Appeals. (Reply, p. 4). He also asserts that that he did not receive a denial of his petition for review from the Arizona Supreme Court until October 18, 2010. (*Id.*). The record does not support these assertions. Instead, the record is clear that Petitioner did not file a petition for review of the trial court's denial of his Second PCR Petition. (*See* Answer, Exh. J; Respondents' Supp. Exhs., pp. 1-2 & Exhs. BB-EE).

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418. *See also Waldron-Ramsey,* 556 F.3d at 1011. Additionally, "[a] petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence." *Bryant v. Arizona Attorney General,* 499 F.3d 1056, 1061 (9th Cir. 2007). *See also Waldron-Ramsey,* 556 F.3d at 1011 (an external force must cause the untimeliness, and thus, mere oversight, miscalculation or negligence on the petitioner's part would preclude the application of equitable tolling). The petitioner must also establish that the extraordinary circumstances asserted were, in fact, the reason why the federal habeas petition was untimely. *Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir. 2003). A *pro se* petitioner's "lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006).

Petitioner does not argue to this Court that equitable tolling is warranted, nor does the record reflect that Petitioner pursued his rights diligently and that some extraordinary circumstance stood in his way. Arguably, Petitioner was aware of the facts relating to his alleged resentencing at the time of the alleged resentencing in January 1998. Moreover, the record conclusively shows that Petitioner was aware of the alleged fact of his resentencing when he filed notice of his Second PCR Petition in August 2006. (Answer, Exh. L). Petitioner has not carried his burden of establishing that he has been pursuing his rights diligently with regard to his resentencing claim and that some extraordinary circumstance stood in his way. On the instant record, Petitioner is not entitled to equitable tolling. Consequently, the instant Petition is untimely filed.

B. Petitioner's Request for Transmission of Record (Doc. 43)

On August 11, 2011, the undersigned Magistrate Judge denied Petitioner's Motion for the Reactivation of Petitioner's Federal Transfer Order to Federal Holding Facility by Petitioner's Former Resentencing Judge (Doc. 13) as duplicative of Petitioner's pending habeas Petition and an attempt to circumvent the habeas proceeding. (*See* Doc. 37).

Thereafter, Petitioner filed an interlocutory appeal of the Order denying his Motion for the Reactivation of Petitioner's Federal Transfer Order to Federal Holding Facility by Petitioner's Former Resentencing Judge. (*See* Doc. 40). On October 18, 2011, the Ninth Circuit Court of Appeals dismissed Petitioner's appeal for lack of jurisdiction because the order challenged in the appeal is not a final or appealable order. (*See* Doc. 45). On, December 20, 2011, the formal mandate issued. (Doc. 45).

In his Request for Transmission of Record, Petitioner requests that the Court transfer the record in this matter to the Ninth Circuit for review, which the Court construes as a request for Certificate of Appealability (hereinafter "COA"). Rule 11(a) of the Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detentions arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a state court judgment. This Court must determine, therefore, whether a certificate shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, the habeas petition is denied on procedural grounds without reaching the petitioner's "underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

Assuming the District Court adopts the recommendation that this matter be dismissed as untimely, such decision will be on procedural grounds. To the extent that Petitioner's

claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling." Accordingly, Petitioner's Request for Transmission of Record, construed as a request for a COA, should be denied.

**III. CONCLUSION**

Petitioner's Petition is time-barred. Because the Petition is time-barred, the Court need not consider Respondents' alternative arguments raised in their Answer.

Respondents allege that Petitioner has submitted and/or relied upon forged documents to support his Petition filed with this Court. (*See* Answer; Respondents' "Response to Petitioner's Motion for the Reactivation of Petitioner's Federal Transfer Order to Federal Holding Facility by Petitioner's Former Re-sentencing Judge" (Doc. 18); Respondents' "Response to Petitioner's Motion for Supplemental [sic] Petitioner's Release Information" (Doc. 25)). Among those documents is a February 5, 2003 letter purportedly on United States District Court District of Arizona letterhead and purportedly signed by the Honorable Bernardo P. Velasco, who is currently a United States Magistrate Judge.[6] (*See* Petitioner's Reply (Exhibits to Doc. 23)). The record in this case should be referred to the United States Attorney's Office for the District of Arizona and/or the Pima County Attorney's Office for investigation as to whether Petitioner has engaged in criminal conduct with regard to this action.

**IV. RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court,

---

[6] Also among the documents submitted by Petitioner is a January 12, 1998 Order issued in Pima County Superior Court case number CR-35933 purportedly signed by Judge Velasco when he was sitting as a Pima County Superior Court Judge. (*See* Petitioner's "Reply to Respondents' Response to Petitioner's Federal Transfer Order to Federal Holding Facility By Petitioner's Former Resentencing Judge" (Exhibit to Doc. 19). Respondents maintain that other forged documents were submitted on Petitioner's behalf including an order purportedly signed by Judge Velasco on January 12, 1998 in CR-29681, CR-29722, and CR-35933. (Answer, pp.5-8 & Exh. Q (Internal Exh. A, Att. 10)).

after its independent review: (1) dismiss Petitioner's Petition for Writ of Habeas Corpus. (Doc. No. 1) as time-barred; and (2) deny Petitioners Request for Transmission of Record (Doc. 43), construed as a request for a certificate of appealability

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). If objections are filed, the parties should use the following case number: **CV 10-633-TUC-FRZ.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 23rd day of December, 2011.

_____
Héctor C. Estrada
United States Magistrate Judge